SOUTHERN CALIFORNIA EDISON COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

Kern River Gas Transmission Company, et al., Intervenors.

No. 97–1699.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 23, 1999.

Decided April 9, 1999.

David G. Leitch argued the cause for petitioner. With him on the briefs was Douglas Kent Porter. Kevin J. Lipson and Richard T. Saas entered appearances.

Andrew K. Soto, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. On the brief were Jay L. Witkin, Solicitor, Susan J. Court, Special Counsel, and Laura J. Vallance, Attorney.

David L. Huard and Michael W. Hall were on the brief for intervenor Southern California Gas Company.

Before: WILLIAMS, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Petitioner Southern California Edison Co. ("Edison") challenges FERC's refusal to look into allegations that Southern California Gas Company ("SoCal") had abused its market power in the "secondary release" market for gas pipeline capacity. The Commission decided that SoCal's compliance with the maximum tariff rate made any inquiry into such issues unnecessary, and dismissed the complaint brought by Edison under § 5 of the Natural Gas Act, 15 U.S.C. § 717d. *Southern California*

*Edison Co. v. Southern California Gas Co.,* 79 FERC ¶ 61,157, *reh'g denied,* 80 FERC ¶ 61,390 (1997). We disagree and remand the case.

\* \* \*

Edison's complaint, filed in March of 1997, set out the facts as follows: Two interstate pipelines carry gas from the San Juan Basin to the California border. So-Cal is the dominant holder of firm capacity on these lines and has market power in that transportation market. Of the 1450 MMcf/day of firm capacity that it holds (representing 30–40% of the total capacity), SoCal uses 1057 MMcf/day to provide gas to its "core" customers—that is, residential and small commercial users.[1] The remaining 393 MMcf/day has been and is available for release into a secondary market. See 79 FERC ¶ 61,157 at 61,661.

By Edison's account, SoCal has exercised such market power by releasing capacity to one of its subdivisions at below-market rates and offering additional capacity only at an above-market minimum bid price. This overpricing of the capacity nominally offered to others costs SoCal nothing, says Edison, because the state regulatory agency allows SoCal to recover, by means of an Interstate Transportation Cost Surcharge ("ITCS"), the difference between the cost of the capacity to it, approximately $12 per MMBtu/month, and anything it may recover by releases in the secondary market ($0.00 for capacity not released, and $1.20 for capacity released to its affiliate). According to Edison, SoCal set a minimum of $4.20 per MMBtu/month for releases to others.

The Commission, finding no violation of its capacity release regulations, 18 CFR § 284.243, dismissed Edison's complaint without factual inquiry. 79 FERC ¶ 61,-157. It then denied rehearing, rejecting Edison's contention that the agency had to evaluate alleged abuses of market power even absent a violation of these regula-tions. 80 FERC ¶ 61,390. Edison filed this petition in November 1997.

\* \* \*

FERC makes much of the here-uncontested finding that no regulation was violated. It points particularly to the regulatory requirement—satisfied here—that secondary release prices be no higher than the maximum tariff rate (that is, the maximum rate the Commission allows a pipeline—the primary seller of capacity—to charge). See 18 CFR § 284.243(e), (h)(1). Because that maximum was fixed as a "just and reasonable" rate, FERC argues, Edison has no basis for its complaint.

It is clear that, as a statutory matter, the Commission's duties are not so limited. Section 5 of the Natural Gas Act gives FERC jurisdiction not only over "unjust" and "unreasonable" "rate[s]" but also over unjust and unreasonable "practice[s]", as well as "unduly discriminatory" or "preferential" rates or practices. 15 U.S.C. § 717d(a). That the rate charged in a particular instance is just and reasonable still leaves in place these other possible grounds for Commission action.

Nor was it enough for the Commission to point to SoCal's compliance with the established maximum rate for released capacity. Here FERC reasoned by analogy to its treatment of pipelines. They are "presumed to have market power," yet are allowed to charge up to the maximum just and reasonable rate without further scrutiny; FERC apparently believed that a releasing shipper could not be better situated to abuse market power than a pipeline. 80 FERC ¶ 61,391 at 62,302. This reasoning probably makes sense ordinarily, but here overlooks the ITCS. While revenue losses on unmade sales constrain an ordinary monopolist's ability to reduce output and raise prices, the ITCS enables SoCal to give its own units artificially low prices, and to price sales to others at unaccepta-

---

1. Pursuant to gas industry restructuring, So-Cal no longer provides interstate transporta-tion service to "non-core" customers.

ble prices, with no sacrifice of transportation revenue whatever.

FERC's final rationale—that shippers might refuse to participate in the capacity release program at all if they knew they would be subjecting themselves to market power scrutiny and the possible remedies therefor, see *id.*—also fails to account for the distinguishing fact of the ITCS. There is no reason why a decision to examine market power issues here need expose *all* shippers to possible scrutiny: the Commission could, by the terms of its decision, simply limit possible objects of investigation to those capacity-holders who are faced with the same perverse incentives as SoCal with the ITCS. Assuming that the ill effects of greater intervention justify the Commission's general reliance on compliance with maximum rates, they do not necessarily do so in the special case of the ITCS, and the Commission's assumption that they do is unexplained.

\* \* \*

Because the Commission's decision not to examine the market power issues raised by Edison was arbitrary and capricious, we remand the case. We note, however, that the facts underlying Edison's claimed aggrievement are now unclear. At the time of the initial complaint through the filing of the petition for review, Edison owned a number of gas-fired electricity generation plants, and was harmed in this capacity by higher gas prices. Pursuant to state law, however, Edison sold these plants in 1998; it now purchases electricity for distribution from the California Power Exchange ("PX"). Although Edison continues to generate power from non-gas sources such as nuclear, coal and hydroelectric, it is a net buyer from the PX. Because gas often is the fuel for marginal electricity supply, according to Edison's affidavit, gas prices drive PX electricity prices, and Edison continues to be adversely affected by gas price increases. This and other standing issues (such as Edison's possible injury as a firm that funds the ITCS) should be aired before the Commission, so that we may better evaluate standing if the Commission's decision on the merits leads Edison to petition for review again.

SoCal, as Intervenor, points to other changes in circumstance—its merger with San Diego Gas & Electric and the latter's sale of *its* gas-fired plants—as signs that the incentive structure no longer favors the kind of market power abuse alleged by Edison. But manipulation of the downstream electricity-generation market does not exhaust the possible benefits to SoCal from abuse of its market power in the gas transportation market. Edison points to the energy futures markets and to competition between electricity and core gas services. We leave these to be considered by the Commission.

We grant Edison's petition and remand the case to FERC.

*So ordered.*